

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### Nos. PD–0287–11, PD–0288–11

### CRYSTAL MICHELLE WATSON and JACK WAYNE SMITH, Appellants

### v.

### THE STATE OF TEXAS

### ON APPELLANTS' PETITIONS FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### YOUNG COUNTY

**MEYERS, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

Appellants Crystal Michelle Watson and Jack Wayne Smith were charged with the offense of attack by dog resulting in death. TEX. HEALTH & SAFETY CODE § 822.005(a)(1). The jury found them guilty and sentenced each to seven years' confinement and a $5,000 fine. Appellants appealed, and the court of appeals affirmed the judgments of the trial court. *Watson v. State*, 337 S.W.3d 347 (Tex. App.– Eastland 2011); *Smith v. State*, 337 S.W.3d 354 (Tex. App.–Eastland 2011). We granted

Appellants' petitions for discretionary review and consolidated the cases to consider whether Texas Health and Safety Code Section 822.005(a)(1) is unconstitutionally vague and therefore void and whether the convictions violate both the unanimous jury guarantee of the Texas Constitution and the "substantial majority" requirement of the Sixth Amendment of the United States Constitution. We will affirm the court of appeals.

**FACTS**

Appellants live in a rural area and were the owners of several pit bulls. On the day of the attack, Watson's daughter had been playing with Tanner Monk, a 7-year-old boy who lived around the corner. Although the properties were separated by a wire fence, there was a trail between their houses that went through an opening in the fence. The children had been going back and forth on the trail, and Appellants' pit bulls had been playing and walking with them. At around 3 p.m., Watson asked her daughter to come home so they could drive into town. Tanner also returned to Appellants' house to get his water gun from Watson's daughter. About an hour later, Sharon Rogers, who lived down the street from Appellants, saw Tanner lying in a drainage ditch about 100 feet from the gate to Appellants' house. Rogers stopped to check on him, but two white pit bulls chased her back to her car. She noticed that there was blood on the dogs, so she called 911. When officers arrived at the scene, they shot two dogs that were acting aggressively, and saw another dog run through an open gate to Appellants' yard. The officers found that Tanner was dead and had bite marks covering his body. Officers noticed blood on

the ground around Tanner's body, but no drag marks or blood trails, which indicated to them that he was killed in the ditch where he was found. During the investigation of the scene, officers found one of Tanner's shoes in Appellants' yard and seized two more dogs from Appellants' residence. Other than a small amount of Tanner's blood on the shoe found in Appellants' yard and Tanner's blood on all four of Appellants' dogs, there was no blood found on Appellants' property.

One of the first deputies to arrive on the scene observed that the fence around Appellants' property was "a broken down field fence with holes in it" and stated that it would not be capable of holding dogs in, even if the gate had been closed. He also noticed that there were no dog pens, dog houses, stakes, or chains to keep the dogs in the yard.

Watson and Smith were charged, in separate indictments, with Attack by a Dog and were tried together. At Appellants' trial, the medical examiner testified that most of Tanner's injuries occurred right around the time of his death and that the injuries to his neck would have caused him to bleed to death in two to three minutes. And, based on the amount of blood at the scene, it is most likely that the major injuries occurred where his body was found, although some of the injuries to Tanner's arms and legs could have occurred elsewhere. He stated that the injuries were consistent with an animal attack by a dog or other carnivore and that the cause of death was mauling by canines. He said that Tanner died of blood loss, but agreed that most of the injuries to Tanner's legs would

have bled very little and that Tanner would have been able to move after those injuries were inflicted.

A forensic dentist testified that the dog-bite marks on Tanner's body were so commingled that he could not tell them apart, and thus he could not tell which of the four dogs had made the marks. He testified that each of the four dogs could have made any of the marks, but said that he could not say exactly what type of animal inflicted the wounds. He also acknowledged that, from the bite-mark pattern, he could not say exactly what species had made the marks and that he could not eliminate many other kinds of animals as having made them.

The application portion of the jury charge instructed the jurors as follows:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that on or about the 18th day of May, 2008, in the County of Stephens, and State of Texas, as alleged in the indictment, that the defendant[s], [CRYSTAL MICHELLE WATSON and] JACK WAYNE SMITH, did then and there with criminal negligence, fail to secure a dog or dogs and one or more of those dogs made an unprovoked attack on another person, namely TANNER JOSHUA MONK, that occurred at a location other than the owner's real property, namely on or about County Road 415, that caused the death of TANNER JOSHUA MONK, then you will find the defendant guilty of the offense of Attack by Dog Resulting in Death and say so by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty".

The jury found Watson and Smith guilty. Both Appellants filed an appeal arguing that the statute under which they were charged is unconstitutionally vague and that their constitutional rights to a unanimous jury verdict were violated.

**COURT OF APPEALS**

The court of appeals issued two separate opinions, one for each Appellant, containing identical facts and analysis. The court of appeals determined that the Attack by Dog statute is constitutional because the undefined terms relate to the actions of a dog rather than the conduct of a person. The court of appeals said that the "acts prohibited by Section 822.005(a)(1) are defined in such a way as to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited" and held that "Section 822.005(a)(1) provides fair notice to citizens as to the type of conduct that is proscribed: failing to secure your dog when you ought to be aware of the risk that the dog will, without provocation, attack a person." *Watson*, 337 S.W.3d at 350; *Smith*, 337 S.W.3d at 357. The court of appeals addressed the argument that the statute is unconstitutional as applied in this case and said, "Even if the attack began at appellant's residence, it is clear from the evidence that Tanner was fatally attacked at a location other than appellant's residence. We hold that Section 822.005(a)(1) is not unconstitutional on its face or as applied in this case." *Id*.

The court of appeals states that the jury charge allowed the jury to find Appellants guilty if their dog or dogs "made an unprovoked attack" at a location other than the owners's property. Because this charge required each juror to find that an attack occurred somewhere off Appellants' property, the court of appeals concluded that the jury's verdict must have been unanimous as to that element of the offense. The court of appeals

affirmed the judgment of the trial court.

## ARGUMENTS OF THE PARTIES

Appellants argue that the statute is facially void and void for vagueness. They claim that it is facially unconstitutional because, by not defining the words "attack" and "unprovoked," it fails to provide adequate notice of what conduct is prohibited. And, citing *Lawrence v. State*, 240 S.W.3d 912 (Tex. Crim. App. 2007), Appellants argue that the statute is void for vagueness because it fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement.

Appellants argue that the Attack by Dog statute is open-ended and allows the jury to determine what conduct is prohibited. The statute makes the dog's owner criminally responsible for the behavior of his animal without defining the behavior and does not give dog owners notice of what acts perpetrated by a dog are criminal. Appellants say that the statute offers no guidance on how to enforce the law, and that it is open to interpretation by law enforcement and the fact finder, who must "step into the shoes of the Legislature and define the criminal behavior, thereby violating the Separation of Powers Doctrine."

Appellants contend that the State invited each juror to individually define the term "attack," which is a definition critical to prove an element of the offense. Appellants argue that the unanimity requirement dictates that each juror agree that the defendant committed the same, single, specific criminal act and analogize this situation to cases of

ongoing acts of sexual abuse. Here, the State said that the jury had to find only that an attack occurred somewhere off Appellants' property, and that it did not matter if the victim was first bitten on the property. Appellants argue that, as a result, some of the jurors may have believed that the attack started in the Appellants' yard and some may have thought the attack occurred only off their property. Therefore, according to Appellants, if the legislature did not intend for the definition of "attack" to include a situation where the victim is initially bitten on the property, then Appellants, by law, would not be guilty. Appellants argue that the Legislature's intended meaning of the term "attack" was so vague that it undermined the jury's ability to unanimously agree on a single criminal act upon which to base the convictions. Thus, the verdict does not "meet either the unanimous jury guarantee of the Texas Constitution, or the "substantial majority" requirement of the Sixth Amendment to the United States Constitution."

The State argues that the constitutional issue was not preserved because Appellants' pretrial objections did not specifically apprise the trial judge of the issue now raised on appeal. The State says that, even if the issue was preserved, the statute is not unconstitutionally vague. The undefined words in the statute are not ambiguous and are understood by persons of ordinary intelligence. The State argues that the conduct prohibited by the statute is not the "unprovoked attack" by the dog, it is the defendant's "failure to secure the dog." Thus the fact that the words "attack" and "unprovoked" were not defined does not affect a person's understanding of what conduct is prohibited and

does not render the statute unconstitutionally vague.

Regarding Appellants' "unconstitutional as applied" argument that the attack may have begun on their property, the State points out that the evidence clearly established that the fatal attack did not occur on Appellants' property.

Finally, the State argues that the jury returned a unanimous verdict for the single offense of attack by dog resulting in death. Because the jury charge specifically required a finding that the fatal attack occurred off Appellants' property, the jury could not have based a conviction on a finding that the attack began on the property. The State says that all the jurors must have agreed that the fatal attack occurred off the property and that the jury charge did not authorize a conviction based on any alternative theories of criminal responsibility.

## CASELAW AND CODE

In *State v. Holcombe*, 187 S.W.3d 496 (Tex. Crim. App. 2006), we considered the constitutionality of a noise ordinance. In our analysis, we stated that:

> It is a basic principle of due process that a statute is void for vagueness if its prohibitions are not clearly defined. The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement. Although a statute is not impermissibly vague because it fails to define words or phrases, it is invalid if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. Moreover, where, as here, a statute does not substantially implicate constitutionally protected conduct or speech, it is valid unless it is impermissibly vague in all applications.

*Id*. at 499 (internal citations omitted). Laws cannot be vague or arbitrary; they must inform a person of ordinary intelligence of what is prohibited by the law so that he may act accordingly and must provide explicit standards to those who enforce them.

In a facial challenge to the vagueness of a law, the appellant must show that the law is impermissibly vague in all of its applications. "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). Terms not defined in a statute are to be given their plain and ordinary meaning, and words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite. *Floyd v. State*, 575 S.W.2d 21, 23 (Tex. Crim. App. 1978).

The Attack by Dog statute in question is Texas Health and Safety Code section 822.005. It says, in relevant part,

> (a) A person commits an offense if the person is the owner of a dog and the person:
> (1) with criminal negligence, as defined by Section 6.03, Penal Code, fails to secure the dog and the dog makes an unprovoked attack on another person that occurs at a location other than the owner's real property or in or on the owner's motor vehicle or boat and that causes serious bodily injury, as defined by Section 1.07, Penal Code, or death to the other person;

**ANALYSIS**

Appellants argue that by failing to define the terms "attack" and "unprovoked," the statute fails to specify what conduct is prohibited, resulting in arbitrary enforcement and a violation of the Separation of Powers Clause of the United States Constitution. Appellants also argue that jurors could have determined different definitions of the elements of the offense, which violates the unanimous jury guarantees of the Texas and United States Constitutions. For example, Appellants claim that "attack" could mean the entire ongoing incident of being bitten by the dogs, in which case the attack could begin on the dog owner's property, the victim could run off the property, and the attack could continue off property to the point of fatally injuring the victim. This, according to Appellants, would result in no criminal liability under the statute. However, if each time a dog bites the victim is considered to be an "attack," then the location of only the fatal bite determines liability under the statute.

We disagree that this variant definition renders the statute invalid as a whole. Failure to secure a dog is the conduct prohibited by the statute, and the key word in the statute, "Secure," is defined. Section 822.001(4) says, "'Secure' means to take steps that a reasonable person would take to ensure a dog remains on the owner's property, including confining the dog in an enclosure that is capable of preventing the escape or release of the dog." By referring to "steps a reasonable person would take," the statute clearly establishes an objective reasonable-person standard. There is also a reasonable-

person element to the *mens rea* required for the offense, criminal negligence, which involves "a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." The statute contains objective criteria for determining what conduct is prohibited and therefore does not permit arbitrary enforcement. *See Holcombe*, 187 S.W.3d at 499-500.

In this statute, the elements of the prohibited conduct are clearly defined: a mens rea of criminal negligence, and the actus reus of failing to secure a dog. An appellant who engages in conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to others. *See Village of Hoffman Estates*, 455 U.S. at 495. Here, Appellants engaged in the proscribed conduct of failing to secure their dogs.

Additionally, the application portion of the charge instructed the jury to find Appellants guilty if they failed to secure their dogs and an attack by the dogs that occurred off their property resulted in Tanner's death. What matters is that Appellants failed to secure the dogs and, as a result of the failure to secure the dogs, the dogs were off Appellants' property when they fatally attacked Tanner. It does not matter if it was a single fatal attack or the fatal portion of an ongoing attack. The jurors were able to agree on the single criminal act of Appellants' failure to secure the dogs and convicted Appellants on the basis of this conduct, not on the conduct of the dogs.

## CONCLUSION

The Attack by Dog statute is not unconstitutionally vague. Appellants' convictions

do not violate the unanimous jury guarantee of the Texas Constitution or the substantial majority requirement of the Sixth Amendment of the United States Constitution. The judgment of the court of appeals is affirmed.

Meyers, J.

Delivered: June 27, 2012

Publish